DLA PIPER US LLP
Mark H. Hamer (State Bar No. 156997)
mark.hamer@dlapiper.com
Alysson Russell Snow  (State Bar No. 225185)
alysson.snow@dlapiper.com
401 B Street, Suite 1700
San Diego, CA 92121
Telephone: (619) 699-2858
Facsimile: (619) 699-2701

T. WADE WELCH & ASSOCIATES
Richard R. Olsen (*pro hac vice*)
rolsen@twwlaw.com
Timothy M. Frank (*pro hac vice*)
tfrank@twwlaw.com
2401 Fountainview, Suite 700
Houston, TX 77057
Telephone: (713) 952-4334
Facsimile: (713) 952-4994

Attorneys for Plaintiffs
ECHOSTAR SATELLITE L.L.C.,
ECHOSTAR TECHNOLOGIES CORPORATION
and NAGRASTAR L.L.C.

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECHOSTAR SATELLITE L.L.C., a Colorado Limited Liability Company, ECHOSTAR TECHNOLOGIES CORPORATION, a Texas Corporation, and NAGRASTAR L.L.C., a Colorado Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>VIEWTECH, INC., a California Corporation, JUNG KWAK, an Individual, and DOES 1-10,<br><br>Defendants. | Case No. 3:07-cv-01273-W-AJB<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1

## TABLE OF CONTENTS

2

Page

3

I.      INTRODUCTION ................................................................................ 1

4

II.     FACTUAL BACKGROUND .............................................................. 1

5

III.    LEGAL STANDARD ......................................................................... 3

6

IV.     ARGUMENTS & AUTHORITIES .................................................... 3

7

8

A.      Plaintiffs Have Stated a Claim for Violations of the Digital
        Millennium Copyright Act. ...................................................... 3

9

B.      Defendants' Facilation of Satellite Piracy Violates § 605 of
        the Communications Act. .......................................................... 6

10

11

C.      Defendants' Intentional Interception, and Facilitation of
        Interception, of Plaintiffs' Encrypted Satellite Signals
        Provides the Basis for a Private Cause of Action Pursuant to
        the Wiretap Act. ....................................................................... 8

12

13

D.      Plaintiffs' State Law Claims for Unfair Competition and
        Unjust Enrichment Are Not Preempted by Federal Law. ........ 11

14

15

        1.      Satellite Communications Are Not Within the
                "Subject Matter" of Copyright. ..................................... 11

16

        2.      The Rights Asserted Under State Law Are Not
                Equivalent to Rights Protected Under the Copyright
                Act. ................................................................................. 12

17

18

V.      CONCLUSION ................................................................................... 14

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF AUTHORITIES

**Cases**                                                                             **Page**

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*,
   69 F.3d 381 (9th Cir. 1995) ................................................................................ 13

*Bell Atl. Corp.  v. Twombly*,
   127 S.Ct. 1955 (2007) ....................................................................................... 3

*Cablevision of Mich., Inc. v. Sports Palace, Inc.*,
   No. 93-1737, 1994 WL 245584 (6th Cir. June 6, 1994) .................................. 6

*Chamberlain Group, Inc. v. Skylink Technologies, Inc.*,
   381 F.3d 1178 (Fed. Cir. 2004) ...................................................................... 5

*Columbia Cable TV Co. v. McCary*,
   954 F. Supp. 124 (D.S.C. 1996) ..................................................................... 7

*CoxCom, Inc. v. Chaffee*,
   No. CIVA 05-107S, 2006 WL 1793184 (D.R.I. June 26, 2006) ..................... 4

*Comcast of Illinois X, LLC v. Hightech Electronics, Inc.*,
   No. 03 C 3231, 2004 WL 1718522 (N.D. Ill. July 29, 2004) ...................... 4, 5

*CSC Holdings, Inc. v. Kimtron, Inc.*,
   47 F. Supp. 2d 1361 (S.D. Fla. 1999) ............................................................ 7

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ......................................................................... 12

*DirecTV, Inc. v. Brower*,
   303 F. Supp. 2d 856 (W.D. Mich. 2004) ........................................................ 9

*DirecTV, Inc. v. Cantu*,
   No. SA-04-CV-136-RF, 2004 WL 2623932 (W.D. Tex. Sept. 29, 2004) ........ 13

*DirecTV, Inc. v. Cardona*,
   275 F. Supp. 2d 1357 (M.D. Fla. 2003) .......................................................... 9

*DirecTV, Inc. v. Childers*,
   274 F. Supp. 2d 1287 (M.D. Ala. 2003) .......................................................... 9

*DirecTV, Inc. v. Ferguson*,
   328 F. Supp. 2d 904 (N.D. Ind. 2004) ..................................................... 4, 10

*DirecTV, Inc. v. Gilliam*,
   303 F. Supp. 2d 864 (W.D. Mich. 2004) ........................................................ 9

                                                  **OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**

**Cases (cont'd)**                                                                                                         **Page**

*DirecTV, Inc. v. Grosman*,
    No. 03-04176 CW, 2005 WL 1230791 (N.D. Cal. May 19, 2005) ................................. 11

*DirecTV, Inc. v. Hendrix*,
    No. C-04-0370 JSW (EMC), 2005 WL 757562 (N.D. Cal. Apr. 1, 2005) ...................... 6

*DirecTV, Inc. v. Hosey*,
    289 F. Supp. 2d  1259 (D. Kan. 2003) ............................................................................ 9

*DirecTV, Inc. v. Hoverson*,
    319 F. Supp. 2d 735 (N.D. Tex. 2004) ..................................................................... 11, 12

*DirecTV, Inc. v. Kitzmiller*,
    No. Civ. A. 03-3296, 2004 WL 692230 (E.D. Pa. Mar. 31, 2004) ................................. 8

*DirecTV, Inc. v. Moreno*,
    No. 03-2478 (JEI), 2003 WL 22927883 (D.N.J. Dec. 11, 2003) ..................................... 8

*DirecTV, Inc. v. Nicholas*,
    403 F.3d 223 (4th Cir. 2005) ....................................................................................... 10

*DirecTV, Inc. v. Pahnke*,
    405 F. Supp. 2d 1182 (E.D. Cal. 2005) ...................................................................... 6, 11

*DirecTV, Inc. v. Spillman*,
    No. Civ.A.SA-04-82-XR, 2004 WL 1875045 (W.D. Tex. Aug. 23, 2004) ............... 11-13

*DirecTV, Inc. v. Tasche*,
    316 F. Supp. 2d 783 (E.D. Wis. 2004) .......................................................................... 10

*DirecTV, Inc. v. Yee*,
    No. C 03-2304 JSW (EDL), 2005 WL 954471 (N.D. Cal. Apr. 26, 2005) ................. 8, 11

*Flowers v. Tandy Corp.*,
    773 F.2d 585 (4th Cir. 1985) ..................................................................................... 9, 10

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ......................................................................................... 3

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
    958 F.2d 896 (9th Cir. 1992) ........................................................................................ 13

*In re DirecTV, Inc.*,
    No. 2:03CN28BO, 2004 WL 3712007 (E.D.N.C. Jan. 20, 2004) ................................... 12

iv

**OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**

**Cases (cont'd)**         **Page**

*In re DirecTV, Inc.*,
   No. C-02-5912-JW, 2004 WL 2645971 (N.D. Cal. July 26, 2004) .............................. 9, 11

*Kan. City Cable Partners v. Espy*,
   250 F. Supp. 2d 1296 (D. Kan. 2003) .............................................................................. 7

*Laws v. Sony Music Entm't, Inc.*,
   448 F.3d 1134 (9th Cir. 2006) ...................................................................................... 11

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ......................................................................................... 3

*Macrovision v. Sima Prods. Corp.*,
   No. 05 Civ. 5587(RO), 2006 WL 1063284 (S.D.N.Y. Apr. 20, 2006) ........................... 4

*McDougal v. County of Imperial*,
   942 F.2d 668 (9th Cir. 1991) ......................................................................................... 3

*RealNetworks, Inc. v. Streambox, Inc.*,
   No. 2:99CV0270, 2000 WL 127311 (W.D. Wash. Jan. 18, 2000) .................................. 13

*Simpson v. AOL Time Warner Inc.*,
   452 F.3d 1040 (9th Cir. 2006) ....................................................................................... 3

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*,
   421 F.3d 1307 (Fed. Cir. 2005) .................................................................................. 5, 6

*TKR Cable Co. v. Cable City Corp.*,
   267 F.3d 196 (3d Cir. 2001) .................................................................................. 6, 7, 8

*United States v. Norris*,
   88 F.3d 462 (7th Cir. 1996) .......................................................................................... 6

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) ....................................................................................... 10

*Whitaker v. Garcetti*,
   291 F. Supp. 2d 1132 (C.D. Cal. 2003) *rev'd and vacated in part*,
   486 F.3d 572 (9th Cir. 2007) ...................................................................................... 13

v

1

**Statutes**                                                                                          **Page**

2

Digital Millennium Copyright Act,
3
     17 U.S.C. § 1201 *et seq.*.............................................................................. 1, 3, 4, 5

4

Communications Act of 1934, as amended,
     47 U.S.C. § 605 *et seq.*.......................................................................... 1, 3, 6, 7, 13

5

Electronic Communications Privacy Act,
6
     18 U.S.C. § 2511 *et seq.*.................................................................... 1, 3, 8, 9, 10, 11

7

Copyright Act,
8
     17 U.S.C. § 101 *et seq.*................................................................................. 11, 12

9

California Unfair Competition Law,
10
     Cal. Bus, & Prof. Code § 17200 *et seq.* ............................................................. 3

11

**Rules**

12

Fed. R. Civ. P. 12(b)(6)............................................................................................ 1, 3

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO DEFENDANTS' MOTION**
                                                                                      **TO DISMISS PLAINTIFFS' COMPLAINT**

1         Plaintiffs EchoStar Satellite L.L.C., EchoStar Technologies Corporation, and NagraStar

2    L.L.C. (collectively "Plaintiffs" or "EchoStar"), file this Opposition to the Motion to Dismiss (the

3    "Motion") submitted by Defendants Viewtech, Inc. and Jung Kwak (collectively "Defendants"),

4    and state as follows:

5                       **I.     INTRODUCTION**

6         This case concerns the intentional interception and theft of encrypted satellite signals.

7    Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss Plaintiffs'

8    claims for violations of various federal and state statutes and for unjust enrichment.  For the

9    following reasons, which are set forth at greater length below, the Motion should be denied.

10    First, claims under the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq*., are not

11    limited to owners of copyrighted materials.  Second, Defendants' facilitation of satellite television

12    piracy violates provisions of the Communications Act of 1934, as amended, 47 U.S.C. § 605 *et*

13    *seq*.  Third, Defendants' intentional interception, and facilitation of interception, of Plaintiffs'

14    encrypted satellite signals provides a claim under the Electronic Communications Privacy Act, 18

15    U.S.C. § 2511 *et seq.*  Finally, Plaintiffs' claims for unfair competition and unjust enrichment are

16    not preempted by federal law.

17                **II.     FACTUAL BACKGROUND**

18         EchoStar provides a variety of video, audio, and data services to consumers throughout

19    the United States via a Direct Broadcast Satellite ("DBS") system.  (Compl. ¶ 2.)  EchoStar uses

20    high-powered satellites to broadcast, among other things, movies, sports, and general

21    entertainment programming (collectively "Programming") to consumers who have been

22    authorized by EchoStar to receive such services after payment of a subscription fee (or in the case

23    of a pay-per-view movie or event, the purchase price).  (Compl. ¶ 2.)  EchoStar operates its DBS

24    Programming  service under the trade name "DISH Network."  (Compl. ¶ 3.)

25         To prevent the unauthorized reception of DISH Network Programming, Plaintiffs utilize a

26    management and security system ("Security System") that encrypts (electronically scrambles)

27    EchoStar's satellite signals using proprietary security keys and technology codes.  (Compl. ¶¶ 5-

28    6, 20-24.)   Therefore, a consumer wishing to subscribe to and receive DISH Network

Programming must first have the necessary equipment, which consists primarily of: (1) a satellite dish antenna; (2) and integrated receiver/decoder ("receiver" or "set-top box"); and (3) a credit card sized EchoStar  Access Card.  (Compl. ¶ 17.)  The Access Card enables the receiver to process and descramble EchoStar's satellite signals using the data and technology housed within an embedded microprocessor.  (Compl. ¶¶ 6, 18-19.)  Absent a subscription to DISH Network, EchoStar will not provide a consumer an Access Card or authorize access to encrypted DISH Network Programming.  (Compl. ¶ 19.)

Despite continuous improvements to the Security System, satellite pirates have discovered a way to steal DISH Network Programming by using so-called "free-to-air" receivers ("FTA Receivers").  (Compl. ¶ 28.)  While similar to the receivers used by EchoStar, these piracy devices cannot descramble and receive DISH Network Programming without utilizing the security keys and technology codes that protect EchoStar's satellite signal.  (Compl. ¶¶ 20-24, 29-30.)  Therefore, FTA Receivers are developed with firmware and components that accept and receive illegal pirate software ("Pirate Software") that contain the requisite secret keys and codes to breach the Security System. (Compl. ¶ 30.)  Once this technology is downloaded or "flashed" into a FTA Receiver, the unit will illegally receive DISH Network Programming.  (Compl. ¶ 30.)

To combat the theft of DISH Network Programming, proliferated by the use of FTA Receivers, Plaintiffs continue to develop and deploy electronic countermeasures ("ECM") to maintain the integrity of the Security System.  (Compl. ¶ 27.)  These efforts, however, may not be effective because EchoStar can neither control nor regulate the distribution of updated Pirate Software used to circumvent a particular ECM.  (Compl. ¶ 36.)  As a result, FTA Receivers continue to pose a serious threat to the security of Plaintiffs' satellite signals.  (Compl. ¶ 36.)

Plaintiffs aver that Defendants illegally manufacture and sell "devices, components, and technology that are primarily designed to circumvent and/or defeat Plaintiffs' Security System and ultimately facilitate the reception of ECHOSTAR's encrypted satellite signals and DISH Network Programming."  (Compl. ¶ 7.)  Specifically, Plaintiffs object to Defendants' design, development, and distribution of "Viewsat" branded FTA Receivers and Pirate Software which allow end users to intercept and steal EchoStar's encrypted satellite signal.  (Compl. ¶¶ 1, 39-40,

2

**OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**

50-52, 56-57, 61-62, 66-67, 71, 78.)  Based on these averments, Plaintiffs assert claims for violations of the Digital Millennium Copyright Act (Count I), the Communications Act of 1934 (Count II and III), the Electronic Communications Privacy Act (Count IV), and the California Unfair Competition Law (Count V).  (Compl. ¶¶ 48-75.)  In addition, Plaintiffs assert a claim for unjust enrichment predicated on Defendants' garnishment of profits and goodwill from EchoStar (Count VI).  (Compl. ¶¶ 76-80.)

## III.   LEGAL STANDARD

A complaint should not be dismissed under Rule 12(b)(6) if the factual allegations "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp.  v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations omitted).  Further, the factual allegations must be construed in the light most favorable to the non-moving party, who is entitled to all reasonable inferences that can be drawn from them.  *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1046 (9th Cir. 2006).  Accordingly, there is "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997); *see also McDougal v. County of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991) ("It is axiomatic that '[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'") (citations omitted).  Likewise, dismissal without leave to amend is proper only if "it is clear that the complaint could not be saved by any amendment."  *Simpson*, 452 F.3d at 1046 (quoting *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005)).

## IV.   ARGUMENT & AUTHORITIES

**A.**   **Plaintiffs Have Stated a Claim for Violations of the Digital Millennium Copyright Act.**

In Count I of the Complaint, Plaintiffs aver a *prima facie* case for violations of the Digital Millennium Copyright Act ("DMCA").   The DMCA expressly prohibits circumvention of copyright protection systems, such as Plaintiffs' Security System: "No person shall circumvent a technological measure that effectively controls access to a [copyright protected] work." 17 U.S.C. § 1201(a).  The DMCA violations at issue here are based upon Defendants' illegal production and

3

distribution of devices and technologies designed to circumvent Plaintiffs' security measures, which control access to copyrighted programming broadcast to consumers.  (Compl. ¶¶ 5-6, 17-25, 48-54.)  The interception and theft of Plaintiffs' encrypted satellite signals has and will continue to cause harm to EchoStar, including lost subscription revenues, goodwill, and increased security costs.  (Compl. ¶¶ 1-7, 48, 54.)  As such, the allegations within the Complaint are more than sufficient to state a claim for violations of the DMCA.  *See* 17 U.S.C. § 1203(a); *Comcast of Illinois X, LLC v. Hightech Electronics, Inc.*, No. 03 C 3231, 2004 WL 1718522, at *6 (N.D. Ill. July 29, 2004); *DirecTV, Inc. v. Ferguson*, 328 F. Supp. 2d 904, 911 (N.D. Ind. 2004).

Defendants erroneously contend that Plaintiffs "lack standing to sue under section 1201" because EchoStar is not the owner of the copyrighted programming that it broadcasts.  (Defs.' Mot. 3:26-4:10.)  Defendants' construction of the DMCA is flawed because the statute itself does not limit claims to owners of copyrighted material, but rather, allows "*[a]ny person injured* by a violation of section 1201 . . . [to] bring a civil action in an appropriate United States district court for such violation." 17 U.S.C. § 1203(a) (emphasis added).  In fact, several courts agree with Plaintiffs' construction having held that persons other than copyright owners, including entities that control or distribute access to copyrighted works, have standing to sue under the DMCA.  *See Comcast*, 2004 WL 1718522 at *7 (denying a motion to dismiss DMCA claims brought by a cable television provider that controlled access to copyrighted programming); *CoxCom, Inc. v. Chaffee*, No. CIVA 05-107S, 2006 WL 1793184, at *10 (D.R.I. June 26, 2006) (granting summary judgment on § 1201 claim where the defendant sold devices to circumvent the descrambling technology used by the plaintiff to protect programming copyrighted by a nonparty); *Macrovision v. Sima Prods. Corp.*, No. 05 Civ. 5587(RO), 2006 WL 1063284, at *1-2 (S.D.N.Y. Apr. 20, 2006) (owner of "technology designed to prevent the copying of copyrighted DVDs" made clear showing that the defendant's video enhancer products violated DMCA).

In *Comcast of Illinois X, LLC v. Hightech Electronics, Inc.*, Comcast, a cable television provider of copyrighted programming, asserted claims under sections 1201(a)(2) and 1201(b)(1) of the DMCA against a number of defendants involved in the Internet-based distribution of piracy devices.  2004 WL 1718522 at *1.  The court found that Comcast was "undisputably not the

4

copyright holder of the programs . . . it provides to its subscribers," but did control "access to such protected material," along with the encryption technology that "protects the copyrighted material." *Id.* at *6. As here, the defendants in *Comcast* moved to dismiss the DMCA claims on the ground "that only copyright holders can bring suit under the statute." *Id.* The court denied the motion, rejecting such a restrictive construction of the DMCA:

> The civil remedies provided in the statute do not explicitly state that recovery is limited to the copyright holder. Therefore, as Comcast controls access to copyrighted material and is a person injured from a violation of 17 U.S.C. § 1201, we conclude that it can bring suit pursuant to the DMCA.

*Id.*

The authorities relied upon by Defendants do not address standing under the DMCA. (Defs.' Mot. 4:11-25.) For example, in *Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, the court simply held that the device underlying a § 1201(a)(2) claim must enable copyright infringement or actual circumvention. 381 F.3d 1178, 1204 (Fed. Cir. 2004); *accord Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1318 (Fed. Cir. 2005) (addressing the nexus between a circumvention device and facilitation of infringement, rather than standing under the DMCA). Accordingly, the *Chamberlain* court concluded that the defendant's garage door opener, which utilized the plaintiff's copyrighted software codes, did not enable infringement or circumvention because the plaintiff authorized its customers' use of the codes. 381 F.3d at 1204. In this case, Plaintiffs specifically allege that:

> The FTA Receivers and corresponding Pirate Software provided by Defendants are: (1) designed and produced by Defendants primarily for the circumvention of Plaintiffs' Security System—a technological measure that effectively controls access to, copying and distribution of, copyrighted works; (2) made available by Defendants despite having no limited commercially significant purpose or use other than to circumvent Plaintiffs' Security System; and/or (3) marketed by Defendants, or through others acting in concert, with knowledge that the devices, components, and technology are used to circumvent Plaintiffs' Security System.

(Compl. ¶ 50.)

Unlike *Chamberlain*, Plaintiffs also assert "Defendants' actions that constitute violations of the DMCA were performed without the permission, authorization, or consent of [Plaintiffs], or any owner of copyrighted Programming broadcast on the DISH Network platform." (Compl. ¶

5

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

52.)  To the extent *Chamberlain*, a case decided on summary judgment, somehow infers the requisite to establish a claim under the DMCA by a provider of subscription television, Plaintiffs have satisfied this pleading requirement.  (Compl. ¶¶ 50, 52)  Therefore, the Court should deny Defendants' Motion to Dismiss Count I of the Complaint.

**B.** **Defendants' Facilitation of Satellite Piracy Violates § 605 of the Communications Act.**

In Counts II and III, Plaintiffs assert violations of the Communications Act, 47 U.S.C. §§ 605(a) and 605(e)(4).  Defendants argue that section 605 of the Communications Act "does ***not*** apply to the use of pirate cable decoding equipment," which Defendants liken to their FTA Receivers.  (Defs.' Mot. 5:9-6:3.)  Provisions of section 605 are not applicable to a cable television descrambler because such a device is used to intercept programming from "the cable system's wire distribution network," as opposed to the direct interception of programming "transmitted through the air."  (Defs.' Mot.  5:14-18.)  Indeed, Defendants' entire position depends on this Court finding no difference between the use of a piracy device to intercept a cable transmission and to intercept a satellite transmission. (Defs.' Mot. 5:18-25.)  However, courts within this Circuit hold that section 605 specifically prohibits the use of a piracy device to intercept satellite transmissions.  *See DirecTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1187 (E.D. Cal. 2005) (finding § 605 "applies to the interception of satellite television transmissions," which the court partially inferred from the defendant's purchase of piracy devices); *DirecTV, Inc. v. Hendrix,* No. C-04-0370, 2005 WL 757562, at *3 (N.D. Cal. Apr. 1, 2005) (distributor of satellite piracy devices liable under §§ 605(a) and (e)(4)).

Moreover, the authorities relied upon by Defendants recognize the distinction between cable and satellite piracy under the Communications Act.  *See TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 205-207 (3d Cir. 2001) (finding the interception of satellite transmissions are prohibited by section 605 of the Communications Act); *Cablevision of Mich., Inc. v. Sports Palace, Inc.*, No. 93-1737, 1994 WL 245584, at *3 (6th Cir. June 6, 1994) ("Section 605(a) may be read as outlawing satellite piracy, while Section 553 bans only the theft of programming directly from a cable system"); *United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996) (holding the unlawful interception of cable programming "must be prosecuted under § 553(a) and not §

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

605"); *Kan. City Cable Partners v. Espy*, 250 F. Supp. 2d 1296, 1302-03 (D. Kan. 2003) ("it is logical to conclude that § 605 applies to radio signals, in this case satellite programming, transmitted through the air, and § 553 applies to radio communications transmitted via a wire or cable system"); *CSC Holdings, Inc. v. Kimtron, Inc.*, 47 F. Supp. 2d 1361, 1362-64 (S.D. Fla. 1999) (following *Norris* to exclude cable transmissions from § 605); *Columbia Cable TV Co. v. McCary*, 954 F. Supp. 124, 128 (D.S.C. 1996) (same).

In *TKR Cable Co. v. Cable City Corp.*, the plaintiff-cable provider brought claims under 47 U.S.C. §§ 553 and 605 based on the defendants' sale of cable television descramblers. 267 F.3d at 196. These devices were capable of intercepting the plaintiff's television signals, which were delivered by satellite to reception facilities and then transmitted to customers via a cable infrastructure. *Id.* at 197. Examining the history of both statutes, the appellate court held that cable transmissions, like those delivered by the plaintiff, were governed by section 553, and section 605 was reserved for the interception of satellite transmissions:

> We therefore conclude that § 605 encompasses the interception of satellite transmissions 'to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system,' and no more. Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605.

*Id.* at 207 (internal citations omitted).

Nonetheless, Defendants' attempt to analogize their conduct to the unlawful distribution of cable piracy devices and completely ignore the allegations in the Complaint and the prescriptions of section 605. Here, Plaintiffs' section 605 claims are premised on Defendants' participation in the unlawful interception and decryption of EchoStar's *satellite* signals. In fact, EchoStar specifically pleads that Defendants violated subsection (a) by assisting others in intercepting EchoStar's encrypted satellite transmissions. (Compl. ¶¶ 56-57.) Plaintiffs also assert that Defendants violated subsection (e)(4) by their direct or indirect involvement in producing and ultimately distributing for sale "Viewsat" branded FTA Receivers and Pirate Software for the unauthorized interception of EchoStar's satellite broadcasts.[1] (Compl. ¶¶ 61-62.)

---

[1] The process through which a customer receives EchoStar's encrypted satellite signal–

OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMPLAINT

The Complaint does not allege the interception of cable transmissions or cable piracy devices. Rather, the allegations in this case focus on the unlawful interception of EchoStar's encrypted satellite transmissions, which, as demonstrated above and confirmed by the Ninth Circuit, is conduct plainly within the scope of section 605. For this reason, the Court should deny Defendants' Motion to Dismiss Counts II and III of the Complaint.

**C.** **Defendants' Intentional Interception, and Facilitation of Interception, of Plaintiffs' Encrypted Satellite Signals Provides the Basis for a Private Cause of Action Pursuant to the Wiretap Act.**

In Count IV, Plaintiffs seek statutory damages against Defendants for violating section 2511(1)(a) of the Electronic Communications Privacy Act ("Wiretap Act"), which states that "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" violates federal law. 18 U.S.C. § 2511(1)(a). Although section 2511(1)(a) is a criminal provision, section 2520(a) provides, in relevant part, that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation." 18 U.S.C. § 2520.

Cases in this Circuit recognize that section 2520 grants a private cause of action for a violation of section 2511 of the Wiretap Act. *See, e.g.*, *DirecTV, Inc. v. Yee*, No. C 03-2304 JSW (EDL), 2005 WL 954471, at *2 (N.D. Cal. Apr. 26, 2005) (holding that a claim under section

---

directly from a *satellite* to a dish antenna and receiver system located at the customer's residence or business locale–is described in the Complaint. (Compl. ¶¶ 17-18.) The fact that EchoStar's satellite signals are eventually routed by wire to a set-top box, *after* being received (or under the facts in this case, "intercepted") as an airborne transmission, is immaterial. *See TKR Cable*, 267 F.3d at 202 (noting a satellite communication under the Communications Act includes "facilities" that are "incidental" to the transmission, which would encompass "[t]he wires that connect a home satellite dish to the living room television"); *DirecTV, Inc. v. Moreno*, No. 03-2478 (JEI), 2003 WL 22927883, at *3 (D.N.J. Dec. 11, 2003) (holding DirecTV's satellite signal, while transmitted via a "coaxial cable system to a television," falls under § 605 because "[a] satellite transmission will inevitably travel a short span of wires as the signal travels from a subscriber's dish to the television set"); *DirecTV, Inc. v. Kitzmiller*, No. Civ. A. 03-3296, 2004 WL 692230, at *2 n.3 (E.D. Pa. Mar. 31, 2004) (finding DirecTV's satellite transmissions within the purview of § 605, even though the signals were allegedly "received through the use of a fixed outdoor satellite dish . . . connected by [a] cable to an indoor satellite receiver . . . connected by [a] cable to a television monitor").

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

2511 is "deemed a claim under 18 U.S.C. § 2520(a), which creates a private right of action for interception, disclosure or intentional use of wire, oral or electronic communication"); *In re DirecTV, Inc.*, No. C-02-5912-JW, 2004 WL 2645971, at *7 (N.D. Cal. July 26, 2004) (acknowledging that "courts have allowed civil actions to proceed under § 2511(1)(a), but the courts in those cases have deemed the actions as governed by § 2520(a)").

Contrary to Defendants' Motion, a majority of cases outside this Circuit have also found that a "private right of action created by § 2520 does apply to conduct that violates § 2511." *Pahnke*, 405 F. Supp. 2d at 1188 (citing *DirecTV, Inc. v. Hosey*, 289 F. Supp. 2d 1259 (D. Kan. 2003); *DirecTV, Inc. v. Childers*, 274 F. Supp. 2d 1287 (M.D. Ala. 2003); *DirecTV, Inc. v. Cardona*, 275 F. Supp. 2d 1357 (M.D. Fla. 2003)); *DirecTV, Inc. v. Brower*, 303 F. Supp. 2d 856, 864 (W.D. Mich. 2004); *DirecTV, Inc. v. Gilliam*, 303 F. Supp. 2d 864, 872 (W.D. Mich. 2004).

Notwithstanding this authority, Defendants rely upon *Flowers v. Tandy Corp.*, 773 F.2d 585 (4th Cir. 1985), for the proposition that "no private civil right of action exists" for a violation of section 2511(1)(a). (Defs.' Mot. 6:16-7:2.) Defendants' reliance upon *Flowers* is misplaced for several reasons. First, nowhere in the *Flowers* decision does the court hold that a violation of section 2511(1)(a) cannot support civil liability. Rather, the Fourth Circuit limited its holding to sellers or manufacturers of illegal equipment who have *not* acted to intercept, disclose, or use protected communications. *Id.* at 589. Further, the *Flowers* court held that "[s]ection 2511, which makes criminal the actual practice of wiretapping, is more properly aimed at protecting the particular victim, and indeed, Congress recognized that purpose by ***expressly providing in § 2520 a private cause of action for victims of acts made criminal in § 2511."*** *Id.* at 588-89 (emphasis added).

Here, unlike *Flowers*, Plaintiffs not only assert that Defendants procured others to intercept Plaintiffs' satellite signals, but also allege that Defendants "were and are intentionally intercepting" the DISH Network satellite signal in violation of section 2511(1)(a). (Compl. ¶ 66.) Because an allegation of "intentional interception" supports a private cause of action pursuant to the Wiretap Act, the rationale in *Flowers* pertaining to the "procuring" language of section 2511 is neither applicable nor dispositive to Plaintiffs' claim. 773 F.2d at 590. In fact, the Fourth

9

1   Circuit recently allowed a private cause of action under section 2511 because the defendant

2   allegedly intercepted the plaintiff's encrypted satellite transmissions. *See DirecTV, Inc. v.*

3   *Nicholas*, 403 F.3d 223, 227 (4th Cir. 2005).

4       EchoStar alleges that Defendants not only distribute, but develop and design updated

5   Pirate Software to circumvent Plaintiffs' Security System.  (Compl. ¶¶ 39-41.)  The purpose and

6   use of the Pirate Software is "to provide consumer pirates with an immediate 'fix' to combat a

7   particular countermeasure or ECM utilized by Plaintiffs to prevent the unauthorized reception of

8   DISH Network Programming."  (Compl. ¶ 43.)  EchoStar believes that Defendants *must* intercept

9   Plaintiffs' encrypted satellite signals to: (1) determine the deployment of an ECM; (2) develop

10  and design a software "fix" to counter the ECM; and (3) ultimately test the updated Pirate

11  Software prior to touting the availability of such technology to the public.  (Compl. ¶¶ 43-44.)

12  For this reason, Plaintiffs specifically allege that "Defendants were and are intentionally

13  intercepting . . . ECHOSTAR's encrypted satellite transmissions" in violation of section

14  2511(1)(a) of the Wiretap Act.  (Compl. ¶ 66.)  *See Usher v. City of Los Angeles*, 828 F.2d 556,

15  561 (9th Cir. 1987)  ("On a motion to dismiss for failure to state a claim, the court must presume

16  all factual allegations of the complaint to be true and draw all reasonable inferences in favor of

17  the nonmoving party.").

18      As demonstrated above, Defendants erroneously contend that "Plaintiffs do not (and

19  cannot) make any allegation that the Defendants themselves actually intercept" Plaintiffs' satellite

20  signal. (Defs.' Mot. 7:6-7.)  Moreover, "it would seem a stretch to find that they were not

21  'engaged in' that act by the sale," design, and distribution of pirate devices and technology.

22  (Compl. ¶¶ 1, 7, 39-47.)  *Ferguson*, 328 F. Supp. 2d at 913; *see also DirecTV, Inc. v. Tasche*, 316

23  F. Supp. 2d 783, 790 (E.D. Wis. 2004) ("Those who sell devices that are designed to steal . . .

24  satellite transmissions to those who are intent on stealing . . . satellite transmissions are, in my

25  view, 'engaged in' intercepting such transmissions.").

26      Accordingly, Plaintiffs have stated a claim for Defendants' violation of section 2511(1)(a)

27  of the Wiretap Act.  *See DirecTV, Inc. v. Grosman*, No. 03-04176 CW, 2005 WL 1230791, at *3

28  (N.D. Cal. May 19, 2005) (granting judgment in favor of a 2511(1)(a) claim); *Pahnke*, 405 F.

Supp. 2d at 1194 (granting summary judgment in favor of a 2511(1)(a) claim); *Yee*, 2005 WL 954471 at *5 (recommending judgment in favor of a 2511(1)(a) claim); *In re DirecTV, Inc.*, 2004 WL 2645971 at *12 (allowing all 2511(1)(a) claims to proceed as an action pursuant to 2520(a)). Therefore, the Court should deny Defendants' Motion to Dismiss Count IV of the Complaint.

**D.**     **Plaintiffs' State Law Claims for Unfair Competition and Unjust Enrichment Are Not Preempted by Federal Law.**

Defendants seek to dismiss Counts V and VI of the Complaint (for unfair competition and unjust enrichment) by claiming preemption pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq*. (Defs.' Mot. 7:12-8:10.)  However, the Ninth Circuit determined that the Copyright Act cannot preempt a state law claim unless both of the following conditions are met:  (1) "the 'subject matter' of the state law claim falls within the subject matter of copyright as described by 17 U.S.C. §§ 102 and 103" and (2) "the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders."  *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006).  As set forth below, neither condition is satisfied in this case.

EchoStar is not asserting claims for copyright infringement, but instead asserts claims for violations of the DMCA, Communications Act, and Wiretap Act.  (Compl. ¶¶ 48-69.)  These allegations are based on Defendants' unlawful interception of EchoStar's satellite signals, including the design, production, and distribution of FTA Receivers and Pirate Software used to circumvent Plaintiffs' Security System.  (Compl. ¶¶ 1, 39-40, 50-52, 56-57, 61-62, 66-67.)  Likewise, Plaintiffs' state law claims for unfair competition and unjust enrichment have the same focus: the interception of satellite signals.  (Compl. ¶¶ 71-72, 77-78.)

**1.**     **Satellite Communications Are Not Within the "Subject Matter" of Copyright.**

Satellite communications are not within the "subject matter" of copyright.  *See* 17 U.S.C. § 102(a) (limiting subject mater of copyright to "original works of authorship"); *DirecTV, Inc. v. Hoverson*, 319 F. Supp. 2d 735, 740 (N.D. Tex. 2004) (no preemption of state law claim based on interception of satellite signals because "[c]opyright law protects 'works of authorship,' not communications"); *DirecTV, Inc. v. Spillman*, No. Civ.A.SA-04-82-XR, 2004 WL 1875045, at *3

11

(W.D. Tex. Aug. 23, 2004) (no preemption because state law interception claim was "based on rights to 'broadcast signals,' not any original works"); *In re DirecTV, Inc.*, No. 2:03CN28BO, 2004 WL 3712007, at *6 (E.D.N.C. Jan. 20, 2004) (no preemption of claim for conversion of satellite signal because "[s]ignals are not subject to copyright protection").

While EchoStar certainly broadcasts copyrighted programming via an encrypted satellite signal, this does not change the nature of the alleged state law claims, nor does it bring such allegations within the "subject matter" of the Copyright Act. *See Hoverson*, 319 F. Supp. 2d at 740 ("The mere fact that plaintiff may be communicating content that is copyrightable, and the author of that content may have intellectual property rights under copyright law, is not sufficient to bring a cause of action for interception of communications within the preemption provision of § 301(a)."); *Spillman*, 2004 WL 1875045 at *3 ("Although Plaintiff does broadcast works that are protected by copyright law, the act of broadcasting them is not the subject matter of copyright."). Standing alone, this is a sufficient basis to find EchoStar's state law claims for unfair competition and unjust enrichment are not preempted by the Copyright Act. *See Laws*, 448 F.3d at 1137-38; *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001).

### 2. The Rights Asserted Under State Law Are Not Equivalent to Rights Protected Under the Copyright Act.

The rights asserted in the state law claims are not equivalent to the rights protected under the Copyright Act. *See Laws*, 448 F.3d at 1143. Section 106 of the Copyright Act grants a copyright owner several exclusive rights, including the right to reproduce, distribute, and display copyrighted works. *See* 17 U.S.C. § 106. Defendants ironically do not identify a single right enumerated in section 106 that is believed to underlie the state law claims for unfair competition and unjust enrichment. Rather, Defendants contend in conclusory fashion that such claims "mirror[ ] the federal copyright claims," apparently because the claims pursuant to the DMCA, Communications Act, Wiretap Act, and supporting factual allegations, are incorporated by reference into each state law cause of action. (Defs.' Mot. 8:11-9:3.) Defendants' analysis is flawed for several reasons.

Foremost, and contrary to Defendants' argument, the anti-trafficking provisions of the DMCA are distinct from a "federal copyright infringement claim." (Defs.' Mot 8:18-25, 9:8-9.) *See RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99CV0270, 2000 WL 127311, at *6 (W.D.

Wash. Jan. 18, 2000).  Consequently, the incorporation of the allegations supporting Plaintiffs' DMCA claim do not transform Plaintiffs' claims for unfair competition and unjust enrichment to one grounded solely within the auspices of the Copyright Act.  Indeed, Defendants fail to cite any authority for their contention that the DMCA, Communications Act, and Wiretap Act preempt the alleged state law causes of action.  (Defs.' Mot. 8:26-9:3.)  Tellingly, there is authority to the contrary.  *See, e.g.*, 47 U.S.C. § 605(f) ("Nothing in this section shall affect any right, obligation, or liability under . . . any other applicable Federal, State, or local law."); *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 386-87 (9th Cir. 1995) (relying on § 605 savings clauses in holding state claims were not preempted under the Communications Act); *Whitaker v. Garcetti*, 291 F. Supp. 2d 1132, 1142 (C.D. Cal. 2003) (finding "Congress' wiretapping statute was not an attempt to occupy the field" and therefore the more restrictive California wiretapping statute was not preempted), *rev'd and vacated in part on other grounds*, 486 F.3d 572 (9th Cir. 2007); S. Rep. No. 90-1097, at 2196 (1968) (stating § 2520 of the Wiretap Act "is intended to be both comprehensive and exclusive, but there is no intent to preempt parallel State law").

EchoStar's unfair competition and unjust enrichment claims simply are not duplicative of rights protected by the Copyright Act.  The state law claims contain extra elements such as the interception of proprietary satellite signals, and the production and distribution of FTA Receivers and Pirate Software to facilitate such interception.  (Compl. ¶¶ 71, 78.)  Where, as here, the "violation of the state right is predicated upon an act incorporating elements beyond mere reproduction or the like, there is no preemption."  *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992); *see Spillman*, 2004 WL 1875045 at *4 (citing *Rasmussen* and finding state law claim not preempted by copyright law because the central issue in such claim was the "interception or acquisition" of satellite communications, "not the copying of copyrighted material"); *DirecTV, Inc. v. Cantu*, No. SA-04-CV-136-RF, 2004 WL 2623932, at *2-3 (W.D. Tex. Sept. 29, 2004) (no preemption in part because the state law interception claim focused on the proprietary satellite signals and "actions which would compromise such communications, rather than on reproduction, performance, or distribution of copyright-protected material").  For these reasons, Defendants cannot establish either requirement

13

1  for preemption under the Copyright Act, and therefore, the Court should deny Defendants'

2  Motion to Dismiss Counts V and VI of the Complaint.

3  **V.**     <u>**CONCLUSION**</u>

4          For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

5  Motion to Dismiss.  Alternatively, Plaintiffs request leave to amend the Complaint as deemed

6  necessary by the Court.

7  DATED:  October 5, 2007                    Respectfully submitted,

8                                             T. WADE WELCH & ASSOCIATES

9                                             By:  s/Alysson Snow_____

10                                                  ALYSSON SNOW, ESQ,
                                                    rolsen@twwlaw.com

11

12                                             Attorneys for Plaintiffs
                                               ECHOSTAR SATELLITE L.L.C.,
13                                             ECHOSTAR TECHNOLOGIES
                                               CORRPORATION and NAGRASTAR L.L.C.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

*Echostar Satellite L.L.C v.* Viewtech, Inc.
Case No. 3:07-CV-1273

3

4      I am a resident of the State of California, over the age of eighteen years, and not a party to
the within action.  My business address is DLA Piper US LLP, 401 B Street, Suite 1700,
San Diego, California  92101-4297.  On October 5, 2007, the following documents were served:

5

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
6      **MOTION TO DISMISS COMPLAINT** on the parties below as follows:

7

DAVID CLARK                                              **Defendants**
8      HIGGS, FLETCHER & MACK LLP                       Viewtech, Inc. and Jung Kwak
401 West A Street
9      Suite 2600
San Diego, CA 92101-7910
10     **d** 619 595-4224
**t** 619 236-1551
11     **f** 616 696-1410

12     ☐ Via First Class Mail
☐ Via Hand Delivery
13     ☐ Via Federal Express
☐ Via Facsimile
14     ☒ Via USDC CM/ECF system
☐ Via Email (PDF file)
15     drclark@higgslaw.com

16     I am readily familiar with the firm's practice of collection and processing correspondence
for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same
17     day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
18     meter date is more than one day after date of deposit for mailing in affidavit.

19     I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.
20

21     Executed on October 5, 2007, at San Diego, California.

22

23     *Rose A. Stevens*
ROSE A. STEVENS

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1751968.1