UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECHOSTAR SATELLITE LLC, ECHOSTAR TECHNOLOGIES CORPORATION, NAGRASTAR LLC,<br><br>　　　　　　　Plaintiffs,<br><br>　vs.<br><br>VIEWTECH, INC. and JUNG KWAK,<br><br>　　　　　　　Defendants. | Civil Case No. 07cv1273 BEN (WVG)<br><br>**AMENDED ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Plaintiffs DISH Network LLC,[1] EchoStar Technologies LLC, and NagraStar LLC move for summary judgment on their first claim for relief against Defendants ViewTech, Inc. and Jung Kwak. Plaintiffs seek a finding that Defendants are liable for violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(2); statutory damages for the violations; a permanent injunction; and reasonable attorneys' fees and costs. Defendants' opposition was due by February 28, 2011, but Defendants have not opposed the motion.[2] For the reasons discussed below, Plaintiffs' motion for summary judgment is **GRANTED**.

---

[1] Plaintiff DISH Network LLC was formerly known as EchoStar Satellite LLC and Plaintiff EchoStar Technologies LLC was formerly known as EchoStar Technologies Corporation.

[2] The Court provided Defendant Kwak with the notice required by *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**BACKGROUND**

Plaintiffs provide satellite television programming to those that pay for the programming. To protect against unauthorized use, Plaintiffs scramble their copyrighted programming. Plaintiffs' receivers contain smart cards that convert Plaintiffs' encrypted satellite signals into viewable programming for paying customers. Plaintiffs protect their transmissions from unauthorized viewing by developing new versions of the smart card, deployment of countermeasures that disable piracy devices, and prosecuting satellite piracy.

Defendant Viewtech sells Viewsat receivers that may be used to receive free-to-air ("FTA") programming. FTA receivers are designed to receive unencrypted free satellite transmissions, but can be converted, using piracy software and additional devices, to obtain encrypted subscription programming. Defendant Kwak founded and is the principal owner of Defendant Viewtech.[3] Defendant Kwak used Defendant Viewtech to pay his personal expenses, federal taxes, and to purchase gifts and real estate for family members. He received more than fifteen million from Defendant Viewtech in 2007 and 2008.

Pursuant to a plea agreement, Defendant Kwak is currently serving an eighteen-month criminal sentence. He plead guilty to orchestrating a conspiracy to circumvent Plaintiffs' security technology by developing piracy-enabling software for Defendants' Viewsat receivers in violation of the DMCA.

Defendants have a significant history of paying people to develop and distribute piracy software over the internet, including piracy mechanisms to circumvent Plaintiffs' countermeasures. Defendants' receivers are designed for piracy. Each model reviewed by an expert contained more than one exact match of the proprietary code and data that resides on Plaintiffs' smart card, a particular algorithm, and a graphical user interface. These elements are essential to decrypt Plaintiffs' signals and serve no purpose in a receiver intended only to obtain free programming. More then 95% of the functions in Defendants' receivers relate to piracy. Additionally, many of Defendants' receivers have structural variations necessary to

---

[3] Defendant Viewtech is currently in bankruptcy proceedings, but Plaintiffs have obtained relief from the automatic stay from the bankruptcy court to pursue a judgment against Viewtech.

1 add particular modules or boards designed to pirate Plaintiffs' programming.

2     Defendants provided thousands of free receivers to moderators on popular satellite piracy web sites so that the moderators could test the receivers for use in pirating Plaintiffs' programming and then post favorable reviews of the receiver's pirating capabilities. Defendants' piracy software, distributed over the internet, has received more than eleven million downloads.

    In 2007, Plaintiffs announced the use of Nagra 3, a new security technology, that impeded the traditional piracy approach. This announcement caused Defendants' receiver sales to drop significantly. By March 2008, Defendants began attempting to crack the Nagra 3 encryption so that their receivers could continue to receive Plaintiffs' encrypted programming without a subscription. Defendant Kwak hired expert computer hackers, co-defendants in his criminal proceedings. They collectively worked to crack Nagra 3 so that the computer code could be published on the internet, allowing Defendants' receivers to, once again, receive Plaintiffs' encrypted programming.

## DISCUSSION

    Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party meets this burden, the burden then shifts to the opposing party to set forth specific facts showing that a genuine issue remains for trial. *Id.* "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Federal Rule of Civil Procedure 1)).

///

///

///

**I.      Defendants' Liability Under the DMCA**

The DMCA, 17 U.S.C. § 1201(a)(2), prohibits trafficking in a technology that: (1) is designed or produced for circumventing a measure that controls access to a copyrighted work; (2) has only limited commercial purpose or use other than circumventing an access measure; **or** (3) is marketed for use in circumventing an access control measure.  Under the statute, "'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure without authority of the copyright owner."  § 1201(a)(3)(A). Plaintiffs have established Defendants violated all three prongs of § 1201(a)(2), although one would be sufficient.

Plaintiffs have demonstrated they employed measures to control access to copyrighted works and that Defendants sold receivers designed to circumvent Plaintiffs' security. Plaintiffs' undisputed evidence establishes that Plaintiffs use complex security measures to prevent unauthorized access to the copyrighted programming Plaintiffs broadcast, including encrypting the signals and providing equipment necessary for lawful users to decrypt the signals.

Plaintiffs' undisputed evidence also establishes that Defendants' receivers are designed and produced to circumvent Plaintiffs' security measures.  As outlined above, the receivers themselves are structurally altered to accommodate pirating devices and Defendants helped develop and market the pirating software for use on their receivers.  Additionally, Defendant Kwak plead guilty to conspiring to circumvent Plaintiffs' most recent security technology, Nagra 3.  Defendants' trafficking in the receivers violated the first prong of § 1201(a)(2).[4]

Plaintiffs have also established Defendants violated the second prong of § 1201(a)(2) — limited use other than circumventing an access measure — because Plaintiffs' undisputed evidence shows that Defendants' receivers are primarily used for pirating.  Defendants have

---

[4] Certainly, selling receivers designed and constructed for free satellite programming, without more, would not violate 17 U.S.C. § 1201.

sold approximately 1.5 to 1.8 million receivers and there have been more than eleven million downloads of piracy software tailored to operate on Defendants' receivers. Additionally, the announcement of the new Nagra 3 security technology resulted in a significant drop in sales of Defendants' receivers. From these undisputed facts, it is reasonable to infer that Defendants' receivers had limited use other than circumventing Plaintiffs' security measures.

Finally, Plaintiffs have also established Defendants violated the third prong of § 1201(a)(2) — marketing a technology used in circumventing an access measure — because Plaintiffs' undisputed evidence shows that Defendants provided free receivers to moderators on popular piracy web sites and encouraged the moderators to provide favorable reviews of the receiver's ability to obtain Plaintiffs' protected programming.

The Court finds Defendants Viewtech and Kwak are liable for violations of § 1201(a)(2).

## II.   Statutory Damages

Plaintiffs are entitled to statutory damages. In any civil action brought for violations of § 1201, the Court may award statutory damages "for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, *as the court considers just*." 17 U.S.C. § 1203(c)(3)(A) (emphasis added). "[T]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)).

Plaintiffs argue that Defendants engaged in at least 1.5 million violations of § 1201(a)(2) based on each device sold. *Sony Computer Entm't America, Inc. v. Filipak*, 406 F. Supp. 2d 1068, 1074. (N.D. Cal. 2005) ("§ 1203(c)(3)(A) authorizes a separate award of statutory damages for each device sold"); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1064 (N.D. Cal. 2010) (treating each unit sold as a violation); *Sony Computer Entm't America, Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 967 (N.D. Cal. 2006) (calculating damages based on the number of devices sold). Defendant Kwak estimated that Defendants

sold between 1.5 and 1.8 million receivers, and the limited documents produced establish sales of at least 1,074,493 from September 2005 to January 2009, without complete sales records for 2009. The undisputed evidence before the Court indicates that the receivers were designed, marketed, and sold for piracy and Defendant Kwak admitted to his efforts to defeat Plaintiff's security measures to increase sales of Defendants' receivers. Plaintiffs have established 1,074,493 violations based on Defendants' sale of at least 1,074,493 receivers intended for piracy.

The minimum the Court may award for each violation is $200 resulting in statutory damages of $214,898,600.

### III. Permanent Injunction

Plaintiffs seek a permanent injunction enjoining Defendants' unlawful conduct. Section 1203(b)(1) authorizes the Court to "grant . . . permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation." The Court finds that under the facts of this case, Plaintiffs are entitled to a permanent injunction.

Defendants are enjoined from:

- manufacturing, importing, offering to the public, or otherwise trafficking in Viewsat receivers, software files, or any other technology or part thereof used in circumventing Plaintiffs' security system or intercepting Plaintiffs' programming;
- circumventing or assisting others in circumventing Plaintiffs' security system, or otherwise intercepting or assisting others in intercepting Plaintiffs' signal;
- testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from Plaintiffs' satellite receivers, smart cards, satellite data stream, or any other part or component of Plaintiffs' security system.

### IV. Attorneys' Fees and Costs

Section 1203(b)(4)-(5) gives the Court discretion to "allow the recovery of costs by or against any party . . .[and] award reasonable attorneys' fees to the prevailing party." An award of reasonable attorneys' fees and costs is appropriate in this case. Within thirty days from the date this order is filed, Plaintiffs shall submit an affidavit detailing the attorney's

1  fees incurred, describing the work performed, who performed the work, time expended, and
2  hourly rates.  Plaintiffs may pursue costs in accordance with Civil Local Rule 54.1.

## CONCLUSION

Plaintiffs' motion for summary judgment is **GRANTED**.  The Clerk shall enter judgment in favor of Plaintiffs and against Defendants in the sum of $214,898,600.  Defendants are permanently enjoined as described above.  Plaintiffs are entitled to reasonable attorneys' fees and costs.  Plaintiffs' ex parte motions to file certain audio recordings by disk and to file portions of an expert report identifying the locations of proprietary security codes within receivers are **GRANTED**.

**IT IS SO ORDERED.**

DATED:  April 20, 2011

_____
Hon. Roger T. Benitez
United States District Judge